UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY MANGO,

Plaintiff,

- against –

BUZZFEED, INC.

Defendant.

1:17-cv-06784 (VM-KNF)

Hon. Victor Marrero

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

James H. Freeman
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
jf@liebowitzlawfirm.com

*Counsel for Plaintiff Gregory Mango*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ...................................................................................................... 2

**POINT I:  THE HONORABLE COURT SHOULD GRANT PLAINTIFF'S APPLICATION FOR FEES AND COSTS IN ITS ENTIRETY ............... 2**

  A.  THE PURPOSE OF THE COPYRIGHT ACT WOULD BE FRUSTRATED IF THE COURT WERE TO DENY (OR SUBSTANTIALLY REDUCE) PLAINTIFF'S FEE APPLICATION ...... 2

  B.  A SUBSTANTIAL AWARD OF ATTORNEYS' FEES IS MOST COMPELLING WHERE THE POTENTIAL FOR RECOVERY IS PARTICULARLY LOW ................................................. 3

  C.  THE COURT'S AWARD OF THE ENTIRE AMOUNT REQUESTED WILL NOT CREATE A "WINDFALL" ............................................................................................. 6

**POINT II:  AS LEAD TRIAL COUSEL WITH 18 YEARS EXPERIENCE AT BAR, MR. FREEMAN'S RATE OF $350/HR. IS REASONABLE.................... 7**

**POINT III: THE AMOUNT OF HOURS EXPENDED IS EMINENTLY REASONABLE, WELL-DOCUMENTED AND NECESSARY .............. 8**

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

### CASES

*Assessment Techs. of WI, LLC v. Wiredata, Inc.*,
  361 F.3d 434, 437 (7th Cir. Mar. 17, 2004) ---------------------------------------------------- 4

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
  No. 16-CV-7634 (JMF), 2018 WL 357298, at *3 (S.D.N.Y. Jan. 10, 2018)------------ 3

*Branch v. Ogilvy & Mather, Inc.*,
  772 F. Supp. 1359, 1365 (S.D.N.Y. 1991)------------------------------------------------- 3

*Brefford v. I Had A Ball Co.*,
  271 F.Supp. 623, 627 (S.D.N.Y.1967) ------------------------------------------------- 3

*Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*,
  246 F.3d 142 (2d Cir. 2001) ----------------------------------------------------------- 6

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*,
  564 F.Supp.2d 290 (S.D.N.Y. 2008), *aff'd*, 326 Fed.Appx. 575 (2d Cir. Apr. 21, 2009)
  ----------------------------------------------------------------------------------------- 4

*DC Comics v. Pac. Pictures Corp.*,
  No. 2:10-CV-03633- ODW, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) ------- 4

*Delman Fabrics, Inc. v. Holland Fabrics, Inc.*,
  No. 84 CIV. 2512-CSH, 1986 WL 13803, at *1 (S.D.N.Y. Nov. 28, 1986) ------------ 6

*FameFlynet v. Shoshanna Collection, LLC*,
  No. 16-cv-7645 (RWS), 2018 WL 671267, at *3 (S.D.N.Y. Feb. 1, 2018) ------------- 7

*Goldstein v. California*,
  412 U.S. 546, 556 (1973) ------------------------------------------------------------- 2

*Gonzales v. Transfer Techs., Inc.*,
  301 F.3d 608, 609–10 (7th Cir. 2002)----------------------------------------------------- 5

*Harrell v. Van Der Plas*,
  No. 08-cv- 8252 (GEL), 2009 WL 3756327, *4 (S.D.N.Y. Nov. 9, 2009)-------------- 4

*In Design v. Kmart Apparel Corp.*,
  No. 87 CIV. 8397 (AGS), 1996 WL 4122, at *7 (S.D.N.Y. Jan. 3, 1996)--------------- 6

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) --------------------------------------------- 9

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424, 1432 (9th Cir. 1996) ------------------------------------------------------- 4

*Microsoft Corp. v. Computer Care Ctr., Inc.*,
   No. 06-CV-1429 SLT RLM, 2008 WL 4179653, at *14 (E.D.N.Y. Sept. 10, 2008) --- 8

*Oboler v. Goldin*,
   714 F.2d 211, 213 (2d Cir.1983) ------------------------------------------------------------ 3

*Prout v. Vladeck*,
   316 F. Supp. 3d 784, 802 (S.D.N.Y.), *reconsideration denied*, 319 F. Supp. 3d 741
   (S.D.N.Y. 2018) ----------------------------------------------------------------------------- 9

*Quinto v. Legal Times of Washington, Inc.*,
   511 F.Supp. 579, 581 (D.D.C.1981) ------------------------------------------------------- 1

*U.S. Media Corp. v. Edde Entm't Corp.*,
   No. 94-cv-4849 (MBM), 1998 WL 401532, at *27 (S.D.N.Y. July 17, 1998) ---------- 4

**STATUTES**

17 U.S.C. § 1202(b) ------------------------------------------------------------------------------ 2

17 U.S.C. § 501 ----------------------------------------------------------------------------------- 2

17 U.S.C. § 505 ----------------------------------------------------------------------------------- 2

17 US.C. § 1203(b)(5) -------------------------------------------------------------------------- 2

**TREATISES**

Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.10 (2002) ---------- 4

Paul Goldstein, *Copyright* § 12.3.2.2 (2d ed.2002) --------------------------------------------- 4

**CONSTITUTIONAL PROVISIONS**

CONST., Art. 1, Sec. 8, Cl. 8 ------------------------------------------------------------------- 2

Plaintiff  Gregory Mango ("Plaintiff" or "Mango") respectfully submits this reply memorandum of law in further support of his application for attorney's fees and costs under 17 U.S.C. § 505 of the Copyright Act and 17 U.S.C. § 1203(b)(5) of the Digital Millennium Copyright Act ("DMCA") in the total amount of $66,942.53, which includes $65,132.50 in attorneys' fees and $1810.03 in costs.

## PRELIMINARY STATEMENT

**"An award of attorney's fees helps to ensure that all litigants have equal access to the courts to vindicate their statutory rights.  It also prevents copyright infringements from going unchallenged where the commercial value of the infringed work is small and there is no economic incentive to challenge an infringement through expensive litigation."**

- *Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579, 581 (D.D.C.1981)

Plaintiff's application for attorneys' fees is about ensuring that defendant Buzzfeed, Inc., a billion dollar news media organization, complies with federal copyright law by taking the appropriate steps to secure licenses from working-class photojournalists. The best way to deter future infringement by Buzzfeed (and others similarly situated), is to impose a substantial penalty under the Copyright Act that makes it much more expensive to violate federal law than to abide by it.

By granting Plaintiff's fee application *in its entirety*, the Court will further the purpose of the Copyright Act, which is to incentive the creation of photographic works for the benefit of the public.

1

## <u>ARGUMENT</u>

## <u>POINT I:</u>     THE HONORABLE COURT SHOULD GRANT PLAINTIFF'S APPLICATION FOR FEES AND COSTS IN ITS ENTIRETY

Defendant's primary defense to Plaintiff's fees application is that the Court should only award fees up to through December 15, 2017, when the Court held the initial case management conference.  Defendant's novel argument, which lacks any support in caselaw, is that Mango was unreasonable for taking this case to trial because he knew that his potential recovery on Count I for copyright infringement would be limited to three to five times his standard licensing fee.  [D's Opp Memo, Dkt. #62, pp 8-10 of 21]

Of course, Defendant's argument entirely ignores that Mango filed a two-count complaint, one claim for copyright infringement under 17 U.S.C. § 501 and another for alteration of copyright management information under 17 U.S.C. § 1202(b).  Both statutes provide that attorneys' fees may be awarded to the prevailing party.  17 U.S.C. § 505; 17 US.C. § 1203(b)(5).  As explained below, it is the attorneys' fee provisions that protect the public interest and ensure that infringement suits of moderate economic value are prosecuted to the full extent of the law.

## A.     THE PURPOSE OF THE COPYRIGHT ACT WOULD BE FRUSTRATED IF THE COURT WERE TO DENY (OR SUBSTANTIALLY REDUCE) PLAINTIFF'S FEE APPLICATION

Defendant labels the Court's bench trial in this matter as "pointless." [D's Memo, Dkt #62, p 10 of 21]   But in doing so, Defendant displays an utter lack of comprehension for why the Framers sought to "promote the Progress of Science and useful Arts, …" CONST., Art. 1, Sec. 8, Cl. 8.  "The purpose of the Copyright Act is to encourage people to devote themselves to intellectual and artistic creation by granting authors the exclusive right to the fruits of their labor."  *Quinto,* 511 F. Supp. at 581 (*citing Goldstein v. California*, 412 U.S. 546, 556 (1973).

"Thus a successful suit for copyright infringement involves more than just the vindication of private property rights, for if the Act were not enforced by private suits, the incentives Congress established to encourage authorship would have little effect. One way Congress sought to ensure that the Copyright Act would be enforced was to provide for discretionary awards of costs and attorneys fees." *Id. citing Brefford v. I Had A Ball Co.*, 271 F.Supp. 623, 627 (S.D.N.Y.1967) ("The purpose of an award of attorney's fees to a plaintiff is to deter copyright infringement.").  Indeed, "[a]ttorney's fees are awarded in order to assure equal access to the courts, to provide an economic incentive to challenge infringements, and to penalize the losing party." *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1365 (S.D.N.Y. 1991) (*citing Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983)).

Defense counsel has relentlessly criticized the Liebowitz Law Firm for enforcing U.S. copyright laws on behalf of working-class photographers, as if it would be preferable to grant commercial publishers free reign to poach whatever content they see fit.  However, "[p]ressing meritorious infringement claims does not constitute an 'abuse' of the Copyright Act." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2018 WL 357298, at *3 (S.D.N.Y. Jan. 10, 2018).  To the contrary, the Liebowitz Law Firm's efforts have helped to ensure that a fully functioning licensing market remains intact and that photographers are properly credited for their hard work and dedication to their craft.  This, in turn, benefits the public by incentivizing creation.

**B.    A SUBSTANTIAL AWARD OF ATTORNEYS' FEES IS MOST COMPELLING WHERE THE POTENTIAL FOR RECOVERY IS PARTICULARLY LOW**

Defendant argues that infringement cases of moderate value should be settled automatically as per a fixed mathematical calculus.  [Dkt. # 62, p. 9 of 21]  However, courts in

this Circuit have consistently recognized that where the potential for monetary recovery is small,

the prevailing party should have a "presumptive entitlement" to the full amount of attorneys'

fees.  Thus, in *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F.Supp.2d 290 (S.D.N.Y.

2008), *aff'd*, 326 Fed.Appx. 575 (2d Cir. Apr. 21, 2009), the Honorable Chief Judge McMahon

recognized:

> One such factor the Court may consider [in shifting fees] is the amount at stake
> in the litigation.  In a case decided by the Seventh Circuit, Judge Posner noted
> that **"the prevailing party in a copyright case in which the monetary stakes
> are small should have a presumptive entitlement to an award of attorneys'
> fees."** *Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th
> Cir. Mar. 17, 2004) (citations omitted). This factor bolsters considerations of
> compensation, because "when a meritorious claim or defense is not lucrative, an
> award of attorneys' fees may be necessary to enable the party possessing the
> meritorious claim or defense to press it to a successful conclusion rather than
> surrender it because the cost of vindication exceeds the private benefit to the
> party." *Id.*

*Id.* at 294-95 (boldface added); *see also U.S. Media Corp. v. Edde Entm't Corp.*, No. 94-cv-

4849 (MBM), 1998 WL 401532, at *27 (S.D.N.Y. July 17, 1998) ("the relative modesty of

the amounts awarded to plaintiff in damages suggests that such deterrence is appropriately

served by an award of fees"); *Harrell v. Van Der Plas*,  No. 08-cv- 8252 (GEL), 2009 WL

3756327, *4 (S.D.N.Y. Nov. 9, 2009) ("Far from defendants' position that plaintiff's [fees]

application should be denied because the judgment is already substantially more than the

trivial profits defendants earned from any purported infringement, such an award is

'particularly justified' where defendants' actual profits from the infringement were

relatively small.") (*citing Assessment Techs* at 437).[1]

---

[1]  *Accord Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) ("we are particularly
concerned that the small award for damages in this case is insufficient to deter future copyright
infringements such as the one at issue here"); *DC Comics v. Pac. Pictures Corp.,* No. 2:10-CV-03633-
ODW, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) ("The Ninth Circuit has noted particular concern
that copyright holders will not prosecute infringement actions when the amount at stake is low") (citing
*Magnuson*); Paul Goldstein, *Copyright* § 12.3.2.2 (2d ed.2002); Melville B. Nimmer and David
Nimmer, *Nimmer on Copyright* § 14.10 (2002).

In *Crown Awards,* after Judge McMahon held a two-day bench trial at which $22,845.18 was awarded for willful infringement, the court granted plaintiff the entire amount of attorneys' fees and costs requested in the sum of $150,024.51.  The court noted that:

> "[h]ad this [the $22,845.18] been the only possible award, the Plaintiff might not have litigated the infringement, or might have been forced to accept a settlement which would not fully address the wrong the Defendant committed. Moreover, an award of attorneys' fees would ensure that this particular Defendant would not escape from litigation relatively unscathed, since its actual profits in the case are relatively small . . . Only an award of attorneys' fees will have an appropriately deterrent effect.

> *Crown Awards*, 564 F. Supp. 2d at 296.

The same logic adheres in this case.  Plaintiff was paid a $300 day rate to take the Photograph.  [Order, Dkt. # 56, p. 2]  His highest free market licensing fee was $750. [*Id.* at 3]  But for the participation of Plaintiff's law firm, which registers photographs on behalf of its clients, searches for infringements on-line and then prosecutes meritorious suits on contingency, this case never would have been litigated.

But if cases such as the present suit are never brought to trial, then commercial publishers will enjoy blanket immunity from infringement suits and thereby engage in mass piracy of photographs, virtually all of which have modest values in the Digital Age. *See Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609–10 (7th Cir. 2002) ("willful infringements involving small amounts of money cannot be adequately deterred . . . without an award of attorneys' fees.  No one can prosecute a copyright suit for $3,000. The effect of the district court's decision if universalized would be to allow minor infringements, though willful, to be committed with impunity, to be in effect privileged,

immune from legal redress. The smaller the damages, provided there is a real, and especially a willful, infringement, the stronger the case for an award of attorneys' fees.").

### C.  THE COURT'S AWARD OF THE ENTIRE AMOUNT REQUESTED WILL NOT CREATE A "WINDFALL"

Defendant also argues that the amount requested will create a "windfall" because (1) Plaintiff has a contingency fee arrangement with his counsel; and (2) the amount in fees sought is excessive relative to the damages recovered at trial. [Dkt. # 62, p 10-13 of 21]

Defendant has failed to cite any authority for the proposition that fees should be reduced automatically as a result of a contingency fee arrangement. To the contrary, under section 505 of the Copyright Act, substantial fees may be awarded where plaintiff's counsel works on a contingent fee arrangement. *See, e,g., Delman Fabrics, Inc. v. Holland Fabrics, Inc.*, No. 84 CIV. 2512-CSH, 1986 WL 13803, at *1 (S.D.N.Y. Nov. 28, 1986) (awarding $37,312.50 in fees and $1,930.73 in costs where plaintiff's counsel worked on contingency); *In Design v. Kmart Apparel Corp.*, No. 87 CIV. 8397 (AGS), 1996 WL 4122, at *7 (S.D.N.Y. Jan. 3, 1996) (awarding $65,000 in attorneys' fees under section 505 where plaintiff's counsel worked on contingency).

The cases cited by Defendant in support of its position, such as *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142 (2d Cir. 2001), do not address contingency fee arrangements, let alone require the District Court to apply a substantial reduction in cases where such arrangement exists. Indeed, the *Crescent* decision found that while a billing arrangement may be a factor, it is "not necessarily controlling" in the determination of what fee is reasonable. *Id.* at 144. This leaves the District Court with substantial flexibility in calculating a just and proper award in this case.

6

Defendant's contention that the total amount of fees requested is excessive has

no support at law.  Plaintiff has requested the amount of $66,942.53, which represents a

multiple of 7.65 times the amount of damages recovered at trial.  But this ratio is well

within the fees awarded in other infringement actions in this District where the plaintiff

recovered a modest value (less than $25,000).  *See, e.g.*, *Crown Awards* (granting fees

and costs amounting to 6.57 times the damages awarded); *Harrell* (granting fees and

costs amounting to 8.79 times the damages awarded); *Branch* (granting fees and costs

amounting to 11.67 times the $10,000 damages awarded); *FameFlynet v. Shoshanna*

*Collection, LLC*, No. 16-cv-7645 (RWS), 2018 WL 671267, at *3 (S.D.N.Y. Feb. 1,

2018) (fees and costs amounting to 23.49 times the $750 damages awarded).  [Second

Declaration of James H. Freeman, dated February 22, 2019 ("2d Freeman Declr.") ¶¶ 7-

10  Ex. B-E]

**POINT II:**    **AS LEAD TRIAL COUSEL WITH 18 YEARS EXPERIENCE AT
BAR, MR. FREEMAN'S RATE OF $350/HR. IS REASONABLE**

Defendant argues that Mr. Freeman's rate of $350/hr. is unreasonable because he

is an "out-of-district" attorney.  [Dkt. #62, p. 18 of 21]  This argument should be rejected.

Since joining the Liebowitz Law Firm in July 2017, Mr. Freeman has appeared on 91

cases in the Southern District versus 25 cases in the Eastern District, which means that

78% of his docket is based in the Southern District of New York. [2d Freeman Declr. ¶ 6,

Ex. A]  Accordingly, it would be unjust to reduce his hourly rate simply because his

employer opted to locate its spacious office thirty minutes from high-rent Manhattan.

Plaintiff respectfully submits that Mr. Freeman's rates should be determined

according to the District Court in which he predominantly practices, not where his

desktop is situated.  *See Microsoft Corp. v. Computer Care Ctr., Inc.,* No. 06-CV-1429

SLT RLM, 2008 WL 4179653, at *14 (E.D.N.Y. Sept. 10, 2008) ("Rates are generally, but not always, evaluated in comparison to the prevailing rate in the district *in which the court sits*").[2]

Defendant also argues that Mr. Freeman's time entries include paralegal and administrative tasks.  Specifically, Defendant claims that gathering evidence to support the claim (i.e., taking screenshots of infringing articles); reviewing and synthesizing documents and preparing exhibit lists are tasks that should be performed by non-lawyers.  [Dkt. #62, p. 19 of 21]   But this argument reveals why defense counsel lost the case.

While Mr. Freeman displayed a comprehensive understanding of the documents and chronology of events at trial (in large part due to his hands-on work in synthesizing key documents); defense counsel was repeatedly cautioned by the Court to avoid repetition and stay focused.[3]  Furthermore, making sure that service of process is correctly effectuated and that subpoenas are carefully prepared are ultimately the responsibility of lead counsel.

In short, Mr. Freeman did not have to waste time reviewing the work of non-lawyers; he performed all key aspects of the case himself.   It was Mr. Freeman's attention to the "A-Z" details that ultimately led to his client's vindication at trial.

**POINT III:   THE AMOUNT OF HOURS EXPENDED IS EMINENTLY REASONABLE, WELL-DOCUMENTED AND NECESSARY**

---

[2] Further, at the time of trial, Mr. Freeman had only been working in Valley Stream for about 13 months. He wasn't admitted to practice in E.D.N.Y. until July 2017.  For his prior 16+ years of practice, Mr. Freeman worked exclusively in Manhattan and has been admitted in the Southern District of New York since 2001.  [2d Freeman Declr. ¶ *5*]

[3] Some larger or mid-size firms may "farm out" document review and exhibit lists to junior associates and paralegals, but this breeds inefficiency and, even worse, miscomprehension or confusion when it comes time for the partner to make her presentation at trial.

Defendant argues that Mr. Freeman's entries of 174.95 total hours to handle all aspects of a hard-fought litigation through trial are "implausible and unreasonable" [Dkt. # 62, p 14 of 21].  This argument fails for several reasons.

First, the complex state-of-mind issues attendant to proving both willfulness and an intent to conceal infringement require great attention to detail.  In any legal context, courts recognize that it is "difficult" to establish willful intent, particularly through circumstantial evidence.  *See, e.g.*, *Prout v. Vladeck*, 316 F. Supp. 3d 784, 802 (S.D.N.Y.), *reconsideration denied*, 319 F. Supp. 3d 741 (S.D.N.Y. 2018) ("the standard for willfulness is a high one [because] it involves inquiries into subjective states of mind that are inherently more difficult to prove than the objective facts. . .); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (McMahon, J.) ("proof of state of mind is inherently difficult"); *United States v. Livoti*, 22 F. Supp. 2d 235, 243 (S.D.N.Y. 1998), aff'd, 196 F.3d 322 (2d Cir. 1999) ("[t]he most difficult element, of course, is the required state of mind, or intent.").[4]

Second, the hours expended by Mr. Freeman on a one-year litigation to bench trial are in line with comparable copyright cases involving modest damages (i.*e.*, less than $25,000 at stake).  *See, e.g., Crown Awards* (358.40 attorney hours billed to capture $22,845 at two-day bench trial); *Harrell* (182.60 attorney hours billed to capture $7,500); *Fameflynet* (113.10 attorney hours billed to capture $750 on summary judgment); *Barcroft* (202.80 attorney hours billed to capture $10,880 at one-day bench trial).  [2d Freeman Declr. ¶¶ 7-11; Exs. B-F]

---

[4] Further, the case was made all the more difficult and time-consuming by defense counsel's "severely defective" arguments which Plaintiff was forced to address.

<u>Third</u>, despite questioning Mr. Freeman's time-keeping methods,[5] Defendant has challenged only 64.85 of 175.95 total hours billed.  [Dkt. # 62, p. 16 of 21]  Defendant has arbitrarily challenged 29.35 hours of Mr. Freeman's pre-trial entries, 29 hours of trial preparation, and 3.25 hours of post-trial work.  [*Id.*]  All of these challenges are baseless given that the entries are reasonable on their face.  Moreover, Defendant has not accused Mr. Freeman of vague entries or block-billing.  Thus, even if the Court were to apply a 20% reduction to those time entries challenged by Defendant, this would yield a total reduction of 12.97 hours, or only $4,539.50

However, because Mr. Freeman took more than 12.97 hours to prepare this application, and did not include such time as part of Plaintiff's application for fees, it's essentially a "wash."  Accordingly, Plaintiff respectfully submits that no reduction is warranted.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Plaintiff's principal brief, Plaintiff respectfully requests that his application for fees and costs be granted in its entirety.

Respectfully Submitted:

LIEBOWITZ LAW FIRM PLLC

by: **/jameshfreeman/___**
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660

*Counsel for Plaintiff Gregory Mango*

---

[5] Contrary to Defendant's assertion, Mr. Freeman's reconstructed time entries are, in fact, based solely on contemporaneous records kept in short-hand form.  For the Court's convenience, Mr. Freeman provided concise *descriptions* of the time billed by reference to the docket, internal files and calendars. He did <u>not</u> use the docket, internal files and calendars to "guestimate" his time *ex post facto*. [2d Freeman Declr. ¶ 4]