UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY MANGO,

                          Plaintiffs,

              v.

BUZZFEED, INC.,

                          Defendant.

Case No. 17-cv-6784 (VM-KNF)

*Non-Public Version: Contains Information Designated as "Confidential" Pursuant to Protective Order*

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.      FINDINGS OF FACT**

1.      BuzzFeed is a leading independent online media company that produces news, entertainment, and lifestyle content via its website buzzfeed.com and its various social media channels.  (*See* D. Ex. 5 ¶¶ 10, 12; https://www.buzzfeed.com/about.)

2.      Mango represents that he is a professional photojournalist.  (*See* Am. Cplt. ¶ 5.)

3.      Mango alleges that he took a photograph depicting Raymond Parker, the successful plaintiff in a civil rights action (the "Photograph").

4.      BuzzFeed published a copy of the Photograph to illustrate a news story concerning Mr. Parker's legal victory.  (*See id.* ¶¶ 17, 18, 20, 28, 29.)

5.      BuzzFeed does not dispute that it used the Photograph in a news story, on one occasion, and that it did not obtain a license directly from Mango.

6.      As it was published in BuzzFeed's article, Mango's name did not appear in the "gutter credit," but rather, the name of the law firm that represented Mr. Parker.  (*See id.* ¶¶ 21, 35-41.)

7.      One of BuzzFeed's writers, Michael Hayes, had procured the image after speaking with Mr. Parker's civil rights attorneys; Mr. Hayes asked for comment from Mr. Parker's lawyer Liane Fisher, and asked that she provide him with a picture of Mr. Parker.  (*See* D. Ex. 1 at MANG0042-44, DEF0038.)

8.      Mr. Hayes recalls that Ms. Fisher either sent him the Photograph, which had been used to illustrate a story about Mr. Parker in the New York *Post*, or that she claimed to have authority to use the Photograph from the *Post*, and that gave him permission to use it. (*See* D. Ex. 1 at MANG0037.)

9.      Mr. Hayes did not copy or save the Photograph without this purported permission.  (*See* D. Ex. 7.)

10.     Ms. Fisher seems to recall that Mr. Parker may have himself sent the Photograph to Mr. Hayes (*see* D. Ex. 1 at MANG0026).

11.     Either way, Mr. Hayes was granted or otherwise believed he had permission to use the Photograph in his news story about Mr. Parker's case, and he reasonably relied on this permission, particularly based on his experience dealing with attorneys who offer press kits (including photographs) related to their clients' legal victories.[1]

12.     Mr. Hayes downloaded or saved the image file of the Photograph without touching its metadata (or included CMI, if any), and only added a photo "gutter credit" naming Mr. Parker's lawyers, whom he reasonably believed were entitled to the credit for the reasons stated above.

---

[1] Generally, to the extent that the foregoing proposed findings of fact do not include document citations, BuzzFeed expects the factual support to be provided in testimonial form in depositions or live testimony, or that such support will be drawn from inferences that can be made from the evidence in the record at the conclusion of the trial.

13.     Even if BuzzFeed used the Photograph without a valid license, Mango grossly overvalues his claim.

14.     According to documents produced by the New York *Post*, his "day rate" – the amount a client pays him for an entire day's worth of work on a story, photography, and the rights to make unlimited use of the resulting images – for the New York *Post* assignment to photograph Mr. Parker was $300, lower than the fee to commence an action in this District.  (*See* D. Exs. 2 & 6; Mango Dep. Tr. 88:16-85:8; 90:2-4.)

15.     Documents submitted in this case, and Mango's deposition testimony, additionally show that while Mango shot 30-40 photographs of Mr. Parker, the *Post* used only two of the photographs (*see, e.g.,* P. Exs. 13 & 17; Mango Dep. Tr. 35:10-22), which means that the value of the license for each photograph used by the *Post* was $150 each, assuming that the *Post* did not use any other photographs taken that day.

16.     The evidence Mango has produced indicates that the fee he receives for the comparable use of any given individual photograph can be as low as 90 cents, and at best, is no higher than the low three figures for applicable uses, (*see* D. Exs. 3 & 4), with an approximate average of $51.14 for online use by media companies similar to BuzzFeed.  (*See* D. Ex. 12.)

17.     Further, Mango admitted in his deposition that larger publishers will be charged a higher rate, and that a publisher as large as *Time* magazine had historically paid him only $300 for the use of a photograph.  (*See* Mango Dep. 210:11-18; 213:8-13.)  Even rare and hard-to-obtain photographs concerning extremely in-demand subject matter – which Plaintiff does not contend is the case here – license for similar amounts, such as $450.  (*See id.* 218:23-221:16.)

18.     Moreover, BuzzFeed's evidence shows that the article featuring the Photograph was visited only 8,918 times between the date of publication and June 1, 2018, and revenue and profits earned

or received from the article issue to-date (regardless of whether the Photograph was available at the location at issue) is less than $14. (*See* D. Ex. 8.) For advertisements like those appearing on the article, BuzzFeed obtains a maximum of $14 per 1000 impressions for the article (*i.e.,* number of times the ad loads on a computer browser). (*See id.*) BuzzFeed began providing advertisements on the article at issue in September of 2017, when it began testing providers of advertising services, and the Photograph was removed from the article on November 1, 2017. (*See id.*) The total amount of impressions for the article during September and October 2017 was less than 114. (*See id.*)

## II.   CONCLUSIONS OF LAW

### A.   Statutory Damages, If Any, Should Be Based on a Reasonable License Fee

1.      In copyright infringement actions, a plaintiff who proves liability must elect either (a) the plaintiff's actual damages and any additional profits of the infringer; or (b) statutory damages as provided by the Copyright Act. *See* 17 U.S.C. § 504.[2]

2.      Statutory damages are "not intended to provide a plaintiff with a windfall recovery." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 569 (S.D.N.Y. 1995).

3.      Even in cases involving willful infringement (which is not present here), statutory damages for online uses of photos typically amount to three to five times a reasonable license fee the defendant would have paid, to account for the lost fee and an element of deterrence. *See*, *e.g.*, *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993, at *8-12 (S.D.N.Y. Nov. 2, 2017) (Furman, J.) (holding that a statutory damage award would be

---

[2] As noted herein, because Mango's actual damages (namely, a lost license fee of approximately $51.14) and BuzzFeed's profits (less than $14) under 17 U.S.C. § 504(b) would total less than the minimum damage award of $750 under 17 U.S.C. § 504(c), Mango can be expected to elect statutory damages. Accordingly, for efficiency's sake, these Conclusions of Law focus on the statutory damages formulations that the federal courts apply.

keyed to a five-times multiple of the reasonable license fee the defendant would have paid – not a multiple of the statutory minimum, or the highest license paid, or some other arbitrary number); *Erickson Productions, Inc. and Jim Erickson v. Only Websites, Inc.*, SLIP, 2016 WL 1337277 (S.D.N.Y. Mar. 31, 2016) (awarding "three times the licensing fee the plaintiffs charge typically to those who wish to obtain online usage or an Erickson copyrighted photograph," where Judge Fox "considered [the licensing fee typically charged by Plaintiffs]"). *See also BWP Media USA Inc. v. Uropa Media, Inc.*, No. 13 Civ. 7871(JSR)(JCF), 2014 WL 2011775 (S.D.N.Y. May 16, 2014); *Nat'l Photo Group, LLC v. Bigstar Entm't, Inc.*, No. 13 Civ. 5467(VSB)(JLC), 2014 WL 1396543 (S.D.N.Y. Apr. 11, 2014).

4.      Mango's reliance on default judgments is unavailing, as is his reliance on decisions not involving comparable facts or causes of action.  *See Sadowski v. JSN Global Media, Inc.,* No. 18-cv-1392 (LAP), Dkt. No. 17 at 2 (S.D.N.Y. July 12, 2018).

5.      Here, the reasonable license fee for the single Photograph at issue that "the defendant would have paid," *Broad. Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. Jan. 21, 2016), would logically be far less than Mango's day rate of $300.  *See Reilly v. Commerce*, No. 15-CV-05118 (PAE) (BCM), 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (noting the statutory award must bear "some relation to actual damages suffered").

6.      Until June 1, 2018, Mango provided no licensing data aside from his day rate, and that which he did provide on that date shows that for what appears to be comparable use, the fee paid was as low as 90 cents to the low three figures per photo (*see* D. Exs. 3 & 4); thereafter, he produced evidence that shows an approximate average of $51.14 for online use by media companies similar to BuzzFeed.  (*See* D. Ex. 12.)   Accordingly, the Court exercises its discretion in deciding the licensing value of one photograph, even multiplied by five, would still equal far

less than $750, which means the Court would round up to the that statutory minimum.  This is all Mango is entitled to recover.

7.      Further, there is no evidence in the record that BuzzFeed earned any significant revenues in connection with its one story featuring the Photograph, and in fact, the only relevant evidence shows just the opposite (*see* D. Ex. 8); this, too, factors into the Court's damages calculation.  *See, e.g.*, *Sixx Gunner Music v. The Quest, Inc.*, 777 F. Supp. 2d 272, 274 (D. Mass. 2011) ("Certainly, the fact that Defendant reaped minimal benefits from its misconduct compels the court to exercise restraint in arriving at a damages award.").

8.      The result would be the same under the six-factor test set forth in *Bryant v. Media Right Prod. Inc.*, 603 F.3d 135, 143-44 (2d Cir. 2010) (considering the following factors in reaching a statutory damages calculation:  (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties).

9.      The *Bryant* factors play out as follows:

       a.  BuzzFeed unquestionably does not have a willful state of mind for the reasons discussed herein;

       b.  if BuzzFeed saved any money by using the photograph, as noted above, the value would be minimal, and there is no evidence of any material profits earned from the article featuring the Photograph due to the small advertisement on the page and low impressions (*see* D. Ex. 8);

   c.   if Mango had licensed the Photograph to BuzzFeed, the value would be similarly miniscule;[3]

   d.   multiplying the reasonable license fee accounts for the deterrent factor, *cf. Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2018 WL 357298, at *3 (S.D.N.Y. Jan. 10, 2018) (in deciding fees motion, court noted that it "considered the need for compensation and deterrence in awarding statutory damages in an amount greatly exceeding any damages Plaintiffs were able to prove at trial"), but even so, the cost to fund the defense of this lawsuit without regard to the resources expended by the Court is deterrent enough;

   e.   BuzzFeed has been as forthcoming as was reasonable given Mango's request for extremely invasive, overbroad, and irrelevant discovery on BuzzFeed's financial records; and

   f.   BuzzFeed has acted reasonably and according to applicable law throughout this matter, whereas Mango has been obstinate in his unrealistic expectations of a windfall from this lawsuit and has consistently ignored directly analogous case law.

### B.   BuzzFeed Did Not Act Willfully

10.   Mango offers no evidence of willful infringement, for which he bears the burden of proof, *see Bryant*, 603 F.3d at 144 ("The burden of proving willfulness is on the copyright holder") (citing 17 U.S.C. § 504(c)).

11.   Copyright infringement is considered willful where a defendant has "actual or constructive knowledge 'that its actions constitute an infringement.'" *Branch v. Ogilvy & Mather, Inc.*, 772 F.

---

[3] There is no evidence that BuzzFeed broke news stories or exclusively published the Photograph, and Mango has not provided any evidence that BuzzFeed in any way negatively affected Mango's ability to market and sell the Photograph for exclusive uses by other publications.

Supp. 1359, 1364 (S.D.N.Y. 1991) (quoting *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116-17 (2d Cir. 1986)).

12.     Mango has proffered no evidence to show that BuzzFeed had actual or constructive knowledge of the alleged infringement or that BuzzFeed did not have a reasonable belief that its actions did not constitute infringement.

13.     Indeed, the only relevant evidence in the record suggests just the opposite.  Mr. Hayes, the author of the BuzzFeed article, reasonably relied on representations by Mr. Parker's attorneys that he was free to use the Photograph as depicted in the *New York Post* article about Mr. Parker's legal victory; the evidence further shows the attorneys' approval of the piece.  (*See, e.g.*, D. Ex. 1 at MANG0037-38, 0042-44; DEF0037-41.)

14.     Mr. Hayes had the opposite of actual or constructive knowledge of infringement given that Mr. Parker's legal representatives gave him permission to use the Photograph, even though in reality they may not have had the authority to do so.

15.     To the extent that Mango's contention that the fact that other publications reporting on Mr. Parker's story did not use images, or used generic stock images, is meant to bolster his willfulness argument (which is not clear but is suggested by his very recent production of voluminous articles not at issue here), this fact is irrelevant, but otherwise is undercut by Mango's own deposition testimony.  The primary concern of the *Post* – and by logical extension other media outlets looking to report about the court case of a specific individual – was to obtain a photograph of Mr. Parker to use in the story.  (*See* Mango Depo. Tr. 72:14-73:20; 74:3-8; 76:8-11; 78:10-15.)  BuzzFeed's use of a logical image to illustrate a news story about an individual does not suggest that BuzzFeed acted willfully.

16.     Mango's claims in his Complaint that BuzzFeed must be willful because it "has been sued for copyright infringement" in the past, is "in the publishing industry," is "knowledgeable about licensing photographs," and was represented "by sophisticated counsel" at the time of its use of the Photograph (*see* Am. Cplt. ¶¶ 22-26, 30) are not sufficient to support a finding of willfulness.

17.     BuzzFeed's status as a major media company, its knowledge about licensing, and its retention of counsel do not impute actual or constructive knowledge about the copyright status of the Photograph or the alleged infringement thereof.

18.     To impute such knowledge to BuzzFeed would be to assume that all media companies who license images and retain lawyers should be held to actual or constructive knowledge of the copyright status of every image on the Internet.  Such a result is belied by the Copyright Act, which specifically eschews placing such burdens on online media companies in related areas of the statute such as the Digital Millennium Copyright Act ("DMCA").  *Cf.* 17 U.S.C. § 512(m) (stating that applicability of DMCA safe harbor cannot be conditioned on a service provider "monitoring its service or affirmatively seeking facts indicating infringing activity"); S. Rep. No. 105-190, at 48 (1998) (making clear that "a [service] provider could not be expected, during the course of its brief cataloguing visit, to determine whether [a] photograph was still protected by copyright or was in the public domain; if the photograph was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine").

19.     The existence of prior lawsuits filed against BuzzFeed are also irrelevant to a finding of willfulness, particularly because BuzzFeed has never been ruled liable for copyright infringement.

20.     Rather, it is counsel for Mango (and their other respective clients) who have been subject to multiple sanctions and/or fee awards for bringing frivolous claims and engaging in litigation conduct.  *See, e.g.*, *Steeger v. JMS Cleaning Servs. LLC*, No. 17 Civ. 8013 (DLC), 2018 WL

1136113 (S.D.N.Y. Feb. 28, 2018), *opinion vacated in part on reconsideration*, 2019 WL 1363497 (S.D.N.Y. Mar. 15, 2018); *McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018); *Cruz v. Am. Broad. Cos.*, No. 17-cv-8794 (LAK), Dkt. No. 7 (S.D.N.Y. Nov. 17, 2017).[4]

### C.      BuzzFeed Is Not Liable under Section 1202(b) of the Copyright Act

21.     Mango has adduced no evidence to substantiate a claim for violation of 17 U.S.C. § 1202(b).

22.     Section 1202(b) requires a defendant to *intentionally* remove or alter CMI "knowing, or, . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."  *Id.  See also BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010).

23.     As a threshold matter, it does not appear that the Photograph, itself, includes any CMI in its metadata.  (*See* D. Ex. 7.)

24.     Even so, there is no evidence that Mr. Hayes or anyone else at BuzzFeed intentionally removed any CMI from metadata or elsewhere; rather, Mr. Hayes downloaded or saved the image file of the Photograph without making any changes; he added a "gutter credit" as discussed above to credit the law firm that he believed provided permission.

25.     Nonetheless, while Mango states, in conclusory fashion and based solely on information and belief that BuzzFeed acted with the requisite intent and purpose (*see* Am. Cplt. ¶¶ 36-41), he

---

[4] *See also Rudkowski v. Mic Network, Inc.*, No. 17 Civ. 3647 (DAB), 2018 WL 1801307, at *3-5 (S.D.N.Y. Mar. 23, 2018) (granting motion to dismiss on *de minimis* use grounds; fees and sanctions motion against plaintiff and Liebowitz firm pending); *Kanongataa v. Coed Media Grp., LLC*, No. 16 Civ. 7472 (LAK), Dkt. Nos. 27 & 46 (S.D.N.Y. Feb. 15, 2017) (granting motion to dismiss on fair use and *de minimis* use grounds and awarding fees to defendants against plaintiff represented by Liebowitz firm).

has not carried his burden in *proving* these essential elements of his claim. *See Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 2992663, at *17 (S.D.N.Y. July 14, 2017) ("Fischer has not established that defendants violated the DMCA by removing CMI from his copyrighted photo.").

26.   There is no evidence that Mr. Hayes included a credit to the party he thought was the copyright holder in order to "induce, enable, facilitate, or conceal" an infringement.  If anything, the record shows that BuzzFeed's use of the Photograph and Mr. Hayes' crediting the Photograph to Mr. Parker's lawyers was, at worst, a mistake or misunderstanding (and at best a valid use subject to a license), and such conduct comes nowhere near the *mens rea* required for a CMI claim.

27.   Mr. Hayes had every reason to believe that his use of the Photograph was authorized and thus would have had every reason to believe that a credit to Mr. Parker's lawyers was appropriate and legally sufficient (*see* D. Ex. 1).  Unsupported claims of intentional removal of CMI like the ones at issue here have been dismissed at trial for similar reasons.  *See, e.g.*, *Agence France Presse v. Morel*, No. 10-CV-2730 AJN, 2014 WL 3963124, at *9 (S.D.N.Y. Aug. 13, 2014) ("Because there was therefore insufficient evidence supporting the jury's finding that Getty acted with the knowledge required by § 1202(b), the Court concludes as a matter of law that Getty was not liable under that subsection.").

28.   Finally, Mango's allegations concerning BuzzFeed's "high level of sophistication" (*see* Am. Cplt. ¶ 41) are irrelevant. There is no sophistication element in a CMI claim; intent is the essential element under § 1202(b), and BuzzFeed's use of an image that Mr. Hayes believed was authorized defeats any plausible claim of intent under the statute, as would any mental state that does not go specifically to the intention "to induce, enable, facilitate, or conceal an infringement" of Mango's rights.

29.   Accordingly, the CMI claim must be dismissed as a matter of fact and law.

Respectfully Submitted,

Dated: New York, New York        COWAN, DeBAETS, ABRAHAMS &
     July 13, 2018        SHEPPARD, LLP


<u>/s/Eleanor M. Lackman</u>
Eleanor M. Lackman
Brittany L. Kaplan-Peterson
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
ELackman@cdas.com
BKaplan@cdas.com


*Attorneys for Defendant BuzzFeed, Inc.*