```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/20/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GREGORY MANGO,                      :
                                    :      17 Civ. 6784 (VM)
                    Plaintiff,      :
                                    :
      - against -                   :      **DECISION AND ORDER**
                                    :
BUZZFEED, INC.,                     :
                                    :
                    Defendant.      :
------------------------------------X
**VICTOR MARRERO, United States District Judge.**

Gregory Mango ("Mango") is a photographer who sued
BuzzFeed, Inc. ("BuzzFeed") for copyright infringement
("Count I") and removal of copyright management information
("Count II"). BuzzFeed conceded its liability on Count I, and
on January 17, 2019, the Court found BuzzFeed liable on Count
II and awarded damages for both Counts. See Mango v. BuzzFeed,
Inc., 356 F. Supp. 3d 368, 379 (S.D.N.Y. 2019). Specifically,
the Court awarded $3,750 in damages for Count I, calculated
by taking the photo's $750 licensing fee and multiplying it
by five. For Count II, the Court awarded $5,000 in statutory
damages. The Court also found that "though the award of
statutory damages adequately compensates Mango . . . the more
significant award of costs and attorneys fees stemming from
litigation through trial is necessary for deterrence
purposes[,]" citing Section 505 of the Copyright Act. Id.
(citing 17 U.S.C. § 505). The Court ordered Mango to submit

1

an application for reasonable attorneys fees and costs, for BuzzFeed to respond to that application, and for Mango to provide a reply, if any, shortly thereafter. Id. at 375-79.

Mango submitted his application on February 1, 2019, seeking $65,132.50 in fees and $1,810.03 in costs. (See "Fees Application," Dkt. No. 60, at 1-2.) For the reasons discussed below, the Court GRANTS in part and DENIES in part the Fees Application and awards Mango $44,560.88 in attorneys fees and costs.

## I.   BACKGROUND

Mango seeks attorneys fees for the work of two attorneys, James Freeman ("Freeman") and Joseph Dunne ("Dunne"). Mango calculates that Freeman worked for 174.95 hours at a rate of $350 per hour and Dunne worked for 12 hours at a rate of $325 per hour, totaling $65,132.50. (See id. at 4.) Mango's costs figure includes the $400 filing fee, $75 for service of the summons and complaint, $75 for service of a third-party subpoena, $112 for a "certified deposit copy" request, $854.70 for Mango's deposition, and $293.33 for trial materials, such as papers and binders. (See "Freeman Decl.," Dkt. No. 61, ¶ 13.)

Mango argues that the proposed hourly rates are reasonable for three reasons. First, Mango notes that at the

2

time of trial, both attorneys were experienced. Freeman was a senior associate with eighteen years of legal experience, particularly in copyright litigation, and Dunne was an associate with eight years of legal experience. Second, Mango explains that courts in this district have awarded parties employing similarly-skilled counsel fees between $180 and $461 per hour. Third, because Freeman received a rate of $350 per hour in a recent default judgment, Mango reasons that $350 is a presumptively reasonable rate. (See Fees Application at 4-5.)

Mango also defends the total number of hours worked by the two attorneys. Freeman's 174.95 hours span from preliminary research in September 2017 to post-trial correspondence in October 2018. (See Freeman Decl., Ex. A.) Mango reconstructs the total number of hours from contemporaneous handwritten notes, and provides additional context of the tasks performed with the use of notes, calendars, and other later documentation. (See Freeman Decl. ¶ 5.) The hours do not include any time used to write the Fees Application. (See Freeman Decl. Ex., A.)

Because Dunne did not maintain contemporaneous records, Mango reconstructs Dunne's time using calendars, emails, and the court docket. Dunne appeared before the Court for trial

3

(see Dkt. Minute Entry for 8/13/2019), and Mango argues that this appearance accounted for 5.5 hours of billable work (see Freeman Decl. ¶ 12).

Finally, Mango defends the Fees Application on the grounds that (1) the litigation was successful; (2) the case clarified the legal elements for the removal of copyright management information claims; and (3) the statutory award was high compared to the base $750 licensing fee. (See Fees Application at 9-11.)

BuzzFeed filed its response on February 15, 2019, arguing that the costs, rates, and hours worked by Mango's counsel are unjustified and unsubstantiated. (See "Response," Dkt. No. 62, at 3-4.)

First, BuzzFeed seeks to limit Mango's recovery to fees incurred before December 15, 2017, arguing that Mango needlessly prolonged the litigation beyond that date. (See id. at 3-5.) On that date, the Court suggested during a conference that it was not inclined to depart from the three-to-five times multiple for determining damages with respect to Count I (i.e., $2,250 to $3,750). In later mediation, BuzzFeed offered a $5,000 settlement to Mango, which he

4

rejected. (See id. Ex. B at 202:2-10.)[1] Because Mango rejected a settlement above the three-to-five times multiple range for statutory damages, BuzzFeed argues that Mango should not recover for fees incurred beyond December 15, 2017.

Second, BuzzFeed asks the Court to apply a percentage discount to Freeman's hours for four reasons. To start, BuzzFeed highlights that the awarded amount represents only five percent of the amount sought in the amended complaint ($175,000), suggesting that the litigation was not successful. Second, because the contingency fee arrangement between Mango and his counsel promised only 50 percent of the awarded amount ($4,375), BuzzFeed argues that any larger amount would be a windfall. Third, Buzzfeed contests the accuracy of Freeman's hours, which were calculated using contemporaneous notes but given context with later materials. Fourth, BuzzFeed asserts that many of Freeman's recorded tasks were too simple to bill for, such as taking screenshots of websites, or were inconsistent with the record, such as 4.35 hours to draft a complaint that largely uses recycled language from prior litigation. (See id. at 5-11.)

---

[1] The Court notes that while Mango's deposition suggests that BuzzFeed offered to settle for $5,000, a later exhibit states that BuzzFeed offered to settle for $4,000. (See Dkt. No. 78, Ex. 4.) That difference is immaterial to the Court's conclusion.

5

Third, BuzzFeed seeks to exclude Dunne's hours entirely. BuzzFeed notes that Dunne did not record his hours contemporaneously and that the record includes inaccuracies. For example, Dunne and Freeman billed a separate amount of hours for the same conference. BuzzFeed also asserts that many of Dunne's tasks should not be billable, such as getting a new lawyer up-to-speed on the case or setting up exhibits at trial. (See id. at 11-13.)

BuzzFeed argues that the rates should be lowered to match prevailing rates in the Eastern District of New York because Dunne and Freeman work out of that district. (See id. at 13.)

Finally, BuzzFeed contends that, because the declared costs are not substantiated by receipts or other documentation, every cost besides the filing fee should be removed from the application. (See id. at 15.)

Because BuzzFeed's Response references a confidential contingency fee arrangement, BuzzFeed separately requests to file the agreement under seal. (See Dkt. No. 65.) The Court directed Mango to respond to BuzzFeed's sealing request "showing cause why the relief requested should not be granted." (See id.)

Mango responded by letter dated February 21, 2019. (See "February 21 Letter," Dkt. No. 66.) At the outset, regarding

6

BuzzFeed's request to file under seal, Mango immediately
concedes he had "no opposition to the relief requested." (<u>Id.</u>
at 1.) However, Mango then took the opportunity to address
arguments in BuzzFeed's Response regarding the contingency
fee arrangement, arguing that (1) the contingency fee
arrangement should not result in an automatic reduction; (2)
the litigation was not needlessly prolonged; and (3) a full
fee award would not be a windfall. (See <u>id.</u> at 1-3.)

Mango then filed his reply to BuzzFeed's Response on
February 28, 2019. (<u>See</u> "Reply," Dkt. No. 67.) Mango counters
BuzzFeed's argument that he needlessly prolonged litigation
in two ways. First, Mango notes that BuzzFeed's multiplier
argument, to the extent it applies at all, can apply only to
Count I, not Count II. Second, Mango argues that litigation
through trial and an award of fees is necessary in order to
fulfill the Copyright Act's purpose of deterring copyright
infringement, because the small statutory award is
insufficient by itself. (<u>See</u> Reply at 2.)

Mango contests BuzzFeed's windfall argument by noting
that courts in this district have awarded fees in other
contingency fee cases. (<u>Id.</u> at 6.) In further support, Mango
explains that the requested fee award is 7.65 times the

statutory award, which is in line with similar cases. (Id. at 7.)

Mango opposes any discounting of the Fee Application's total hours. Mango defends the billing of even relatively simple tasks by arguing that the full synthesis of information was vital to the litigation's success, which was partly based on hard-to-prove scienter issues. Mango also benchmarks the number of hours billed in this case to other copyright cases involving modest damages. Finally, Mango attempts to clarify that Freeman's calculation of hours were based solely on contemporaneous notes and only the descriptions of those hours were elucidated with later records. (Id. at 8-10.) As for the hourly rate, Mango supports Freeman billing at rates that predominate in the Southern District of New York because 78 percent of Freeman's work has occurred in this district since July 2017. (Id.)

In order to substantiate certain of these arguments, Mango includes with his Reply over 100 pages of new exhibits, including invoices for attorneys fees from other cases in this district with similar damages awards. (See Dkt. No. 68.)

By letter dated March 1, 2019, BuzzFeed requests that the Court either not consider portions of Mango's February 21 Letter and Reply or grant BuzzFeed leave to file a sur-reply.

(See "March 1 Letter," Dkt. No. 69.) BuzzFeed argues that only the first sentence of the February 21 Letter is relevant to BuzzFeed's request to file the contingency fee arrangement under seal. BuzzFeed further argues that Mango's Reply and its voluminous supporting exhibits present new theories and points and that the Court should provide BuzzFeed the opportunity to respond to those items if the Court considers them. (See id.)

On March 11, 2019, Mango submitted a letter in opposition to BuzzFeed's request for a sur-reply or for the Court not to consider portions of his Reply. (See "March 11 Letter," Dkt. No. 71.) Mango points out that most of the exhibits were items pulled from the dockets of his counsel's previous cases. Next, Mango asserts that BuzzFeed did not specify which theories and points were new. Finally, Mango justifies the inclusion of time logs from other cases as a rebuttal to BuzzFeed's argument that Freeman's hours were implausible. After receiving the March 11 Letter, the Court directed the parties to refrain from further correspondence on this issue unless directed by the Court. (See id.)

## II. **LEGAL STANDARDS**

A. ATTORNEYS FEES

In the Second Circuit, courts calculate attorneys fees using the "presumptively reasonable fee" rule. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee is calculated by multiplying each attorney's reasonable hourly rate by that attorney's number of hours reasonably worked. See id.

To determine a reasonable hourly rate, courts may use their "considerable discretion" and weigh all case-specific variables,[2] bearing in mind that a reasonable paying client wishes to spend the minimum amount necessary. Id. Courts may also make "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel [which may] include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."

---

[2] Arbor Hill suggests that courts can consult at least eighteen factors for weighing reasonable rates. Twelve of these factors originate from Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Arbor Hill adds another six factors. These factors include the complexity and difficulty of the case; the novelty and difficulty of the questions; the level of skill required to perform the legal service properly; whether the fee is fixed or contingent; the amount of damages involved in the case and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. See Arbor Hill, 522 F.3d at 184 n.3.

Farbotko v. Clinton Cty., 433 F.3d 204, 209 (2d Cir. 2005).
Finally, Arbor Hill directs courts to presume that a
reasonable, paying client would most likely hire "counsel
whose rates are consistent with those charged locally,"
unless that client would have paid more for an out-of-district
attorney. See Arbor Hill, 522 F.3d at 191.

To help courts determine the number of hours reasonably
worked, the fee application should include contemporaneous
time records. The records should indicate, "for each
attorney, the date, the hours expended, and the nature of the
work done." N.Y. State Ass'n for Retarded Children, Inc. v.
Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). If this information
is not included, the application "should normally be
disallowed." Id. Courts "should [then] exclude excessive,
redundant or otherwise unnecessary hours." Quaratino v.
Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

In determining how to exclude unnecessary hours, courts
may apply a percentage discount to the overall fee award "as
a practical means of trimming fat from a fee application,"
Carey, 711 F.2d at 1146, because "[a] request for attorney's
fees should not result in a second major litigation," Hensley
v. Eckerhart, 461 U.S. 424, 437 (1983). For example, in this
district, courts have applied percentage reductions to hours

11

worked on a simple legal question, see Heisman Trophy Trust v. Smack Apparel Co., 665 F. Supp. 2d 420 (S.D.N.Y. 2009) (reducing the award by 10 percent), block billing, see id. (reducing the award by an additional 5 percent), hours worked for limited success at trial, see Childress v. Taylor, 835 F. Supp. 739 (S.D.N.Y. 1993) (reducing the award by 67 percent), vague or inconsistent time entries, see Kirsch v. Fleet Street, Ltd., 148 F.3d 149 (2d Cir. 1998) (reducing the award by 20 percent), and unnecessary or inefficient hours worked, see Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (reducing the award by 33 percent).

Similarly, courts may reduce or decline to award costs altogether where counsel fails to proffer documentation of the expenses. See BWP Media USA Inc. v. Uropa Media, Inc., No. 13 Civ. 7871, 2014 WL 2011775, at *4 (S.D.N.Y. May 16, 2014) (taking judicial notice of a filing fee but disregarding all other costs for lack of documentation).

## B. ARGUMENTS RAISED IN REPLIES AND AFFIDAVITS

The Court of Appeals for the Second Circuit accords district courts wide discretion in determining how to handle arguments first raised on reply submissions. Compare Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir. 2005) (holding that the district court did not abuse its discretion

12

by considering an argument first introduced on reply) <u>with</u> <u>Playboy Enter., Inc. v. Dumas</u>, 960 F. Supp. 710, 720 n. 7 (S.D.N.Y. 1997), <u>aff'd</u>, 159 F.3d 1347 (2d Cir. 1998) (holding that the court "need not consider" arguments raised for the first time on reply).

This Court sets forth its position on this topic in its Individual Practices. Specifically, Rule II.D.2 of the Court's Individual Practices state that "[t]he Court will not consider new matters raised in replies for the first time." Furthermore, sur-reply memoranda will be accepted only "in the rare instances in which new controlling law is promulgated after the filing of the reply papers." Similarly, under Rule II.E.1, "[a]ffidavits shall not be used as a vehicle for counsel to describe factual background or legal issues involved in the case . . . or for supplemental argumentation of legal issues that would serve to evade the page limitation set forth in the Court's Individual Practices."

### III. **DISCUSSION**

A. MANGO'S FILINGS

First, the Court must determine which of the submitted materials are properly before the Court for its consideration of the Fees Application. BuzzFeed asserts that parts of each of Mango's February 21 Letter, Reply, and exhibits submitted

13

with the Reply are not properly before the Court. (See March 1 Letter.) On this point, the Court is largely persuaded by BuzzFeed's arguments.

The majority of Mango's February 21 Letter does not address the question of whether the sensitive fee information contained in the contingent fee agreement should be filed under seal. After expressing no opposition to the sealing in the first sentence, Mango proceeds to address the Fee Application's merits. (See February 21 Letter.) The Court did not direct Mango to make arguments about the Fee Application's merits. Consistent with the Court's analogous rules for reply memoranda and affidavits in its Individual Practices, specifically Rules II.E and II.D.2, the Court will not consider Mango's arguments in the February 21 Letter.

For similar reasons, the Court is persuaded that it should not consider the two arguments raised for the first time in Mango's Reply: that the full litigation and award of fees is necessary in order to fulfill the Copyright Act's purpose of deterring infringement (see Reply at 2); and that scienter elements are more difficult to prove and so are worthier of higher rates (see id. at 9). The Court will not consider these arguments.

14

Finally, the Court agrees with BuzzFeed that Mango submitted excessively voluminous exhibits with his Reply. The Court's Individual Practices make clear that accompanying exhibits should be limited to relevant material and excerpts. Mango cannot reasonably claim that he needed to introduce 104 pages of exhibits in support of his ten-page Reply. Per the Court's Individual Practices, Mango should have included only the portions directly relevant to the Reply. Despite this procedural failing, the Court will consider any exhibits relevant to the arguments properly contained in the Reply.

B. ATTORNEYS FEES -- HOURLY RATES

The Court is persuaded that Freeman's and Dunne's proposed hourly rates are reasonable because those rates are in line with typical rates in this district for similarly-experienced attorneys. Freeman predominantly works on cases in this district, is a senior associate, and had eighteen years of legal experience at the time of trial, largely in copyright litigation. Dunne's work as an attorney for eight years also justifies his proposed rate.

The Court is not persuaded by BuzzFeed's reading of Arbor Hill and its accompanying argument that lower average hourly rates from the Eastern District of New York should prevail. (See Response at 13.) BuzzFeed's analysis of Arbor Hill

15

misunderstands the holding of that case. Specifically, Arbor
Hill presumes that the rate within the district of the
litigation prevails. See 522 F.3d at 191. But even if Arbor
Hill presumed a reasonable client would seek more affordable
rates in a neighboring district, BuzzFeed does not provide
any evidence that Mango selected his counsel for that reason.

Therefore, the Court finds that $350 per hour is an
appropriate rate for Freeman's hours and $325 per hour is an
appropriate rate for Dunne's hours.

## C. ATTORNEYS FEES -- TOTAL NUMBER OF HOURS

Although the Court agrees with Mango regarding the
reasonableness of the hourly rates, it does not agree with
the reasonableness of the total number of hours billed,
largely due to the poor record-keeping of Mango's counsel.

The Court begins with Freeman's stated 174.95 hours
figure. Freeman attests that these hours are supported by
contemporaneous handwritten records. (See Freeman Decl. ¶ 5.)
However, Mango acknowledges in his Reply that, while the
number of hours was documented in contemporaneous records,
the purpose of each of those hours, including the amount of
time spent on any individual task, was reconstructed after
the fact. (See Reply at 10.)

16

This purported reconstruction process explains much of the Court's reduction in hours. Such a process makes it difficult to assess entries for accuracy and to determine whether the number of hours billed was appropriate for the work. Despite this difficulty, it is telling that BuzzFeed identified several inconsistencies stemming from this reconstruction process. (See Response at 10-11.)

Rather than assess each individual entry, the Court finds it appropriate to apply a percentage discount to the overall number of hours billed, as other courts have done in similar circumstances. See Carey, 711 F.2d at 1146. Because Freeman did not create descriptions for his hours worked until after the fact, his hours essentially amount to vague entries or block billing. This approach prevents the Court from precisely assessing the merits of any individual entry, and the Court therefore finds that a 20 percent discount should apply. See Kirsch, 148 F.3d at 149 (reducing the award by 20 percent for vague and inconsistent time entries).

The Court is further persuaded that an additional five percent discount is appropriate because of the simplicity of some of the billed work. Activities such as taking screenshots of infringing articles, arranging service of process, and handling court filings, while germane to the case, are non-

17

legal tasks better suited for a paralegal or other assistant than for trial counsel. Mango contends that assigning these tasks to an attorney was critical to the litigation's success. (See Reply at 9.) Specifically, Mango argues, without any support, that taking screenshots actively assists in the cognitive process for counsel. The Court is not persuaded that for an experienced copyright litigator such as Freeman to be aided in any essential way by screenshots, he had to take them himself.

The fact that this particular case helped clarify the legal elements for Count II should mitigate, but not eliminate, the percentage discount for simplicity. Thus, the Court finds a five percent discount to be reasonable. See Heisman Trophy Trust v. Smack Apparel Co., 665 F. Supp. 2d 420 (S.D.N.Y. 2009) (reducing the award by 10 percent for simplicity of the work billed for).

Finally, the Court discounts Freeman's hours by another five percent because of Mango's limited success at trial. See Childress v. Taylor, 835 F. Supp. 739, 743 (S.D.N.Y. 1993) (reducing the award by 67 percent for, among other reasons, limited success at trial). Statutory damages of $8,750 is a small recovery compared to the requested $66,933.53 in legal fees and costs, especially considering that Mango sought

damages of up to $175,000. (See Response at 5-6.) Of course,
the Court is mindful that fee awards could deter future
infringement and litigation, which is undoubtedly one of
Mango's goals. However, as set forth in Arbor Hill, a
reasonable, paying client seeking to spend the minimum amount
would likely balk at paying an attorney over $66,000 in fees
for an award of $8,750. Accordingly, a 30 percent of Freeman's
time discount should apply, resulting in Mango recovering
counsel fees for only 122.465 of Freeman's hours.

As for Dunne, the Court is persuaded that all but 5.5
hours of his work should be struck from the Fees Application.
The 5.5 hours account for the time Dunne billed for attending
the bench trial before the Court on August 13, 2018. (See
Dkt. Minute Entry for 8/13/2018.) However, none of Dunne's
others hours were properly documented by contemporaneous time
records. Therefore, the Court finds that Mango cannot recover
those hours. See Carey, 711 F.2d at 1154. Even if the Court
were to consider the hours, BuzzFeed raises a valid concern
that they may not reflect reality. For instance, in one entry,
Dunne is reported to have conferred with a Freeman on August
10, 2018; however, no such conference appears in Freeman's
records.

19

Like Freeman's hours, Dunne's 5.5 hours should be discounted five percent for Mango's limited success at trial for the same reasons discussed above, resulting in Mango recovering counsel fees for 5.225 of Dunne's hours. The Court is not persuaded that a further discount is appropriate to reflect the supposed simplicity of Dunne's work. In seeking such a discount, BuzzFeed characterizes Dunne's trial work as limited to "setting up a series of file folders containing exhibits (rather than using trial binders), and handing them to Mr. Freemen when he wanted to introduce them." (See Dkt. No. 63 ¶ 17.) While this characterization may describe what BuzzFeed observed, the Court is not a position to question what insight or advice Dunne provided during the course of the trial. Further, the Court and both parties benefitted from any further assistance Freeman received from Dunne during his presentation, which likely kept the trial running more smoothly and in a timely fashion.

Finally, the Court is not persuaded by BuzzFeed's argument that Mango cannot recover for any hours billed after December 15, 2017. BuzzFeed does not cite any case where a settlement offer precluded further fee awards. Instead, BuzzFeed references one case concerning a sanctions dispute, see McDermott v. Monday Monday, LLC, No. 17 Civ. 9230, 2018

20

WL 1033240, at *3 n.4 (S.D.N.Y. Feb. 22, 2018), another granting a fee award, see Megna v. Biocomp Labs. Inc., 225 F. Supp. 3d 222, 225 (S.D.N.Y. 2016), and a third which does not discuss the prospect of settlement, see MCA, Inc. v. Wilson, 667 F.2d 180, 187 (2d Cir. 1981). (See Response at 3-5.) None of those situations apply to this case -- which does not involve sanctions -- and the Court has already determined that fees are warranted. Further, Mango was justified in continuing litigation after the proposed settlement offer was rejected. Not only was Mango's damages award larger than BuzzFeed's proposed settlement offer, but BuzzFeed's reasoning ignores Mango's legitimate interest in deterring future violations by means of a trial on the merits.

For these reasons, the Court discounts the total number of hours of the Fees Application because of record-keeping reasons. In sum, the Court applies a 30 percent discount to Freeman's 174.95 billed hours, resulting in 122.465 hours, and a five percent discount to 5.5 of Dunne's hours, resulting in 5.225 hours.

D. COSTS

Mango did not provide any documentation, beyond a declaration, to substantiate his legal costs, which he claims were incurred for service of process and subpoena, copies of

documents, and clerical supplies. He did not provide receipts, invoices, or any other sort of contemporaneous evidence. Because of this lack of evidence, the submitted materials do not demonstrate whether Mango incurred any of the expenses listed in the Fees Application. The Court takes judicial notice of the filing fee in the amount of $400, which BuzzFeed does not contest, and strikes the remaining costs, for which the Court has no warranted basis for noting their accuracy.

## IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that plaintiff Gregory Mango's application for an award of attorneys fees (Dkt. No. 59) is **GRANTED IN PART** and **DENIED IN PART**. Mango is awarded $44,560.88 in fees and $400 in costs.


**SO ORDERED.**


Dated: New York, New York
      20 August 2019

VICTOR MARRERO
U.S.D.J.